# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

APPEAL Nos. 23-1204 & 23-1205

## UNITED STATES OF AMERICA,
Appellee,

**v.**

## KALEL JORELL MARTÍNEZ-BRISTOL,
Defendant-Appellant.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---

## BRIEF FOR APPELLEE

---

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

Gregory B. Conner
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

# TABLE OF CONTENTS

Jurisdictional Statement ............................................................................1

Statement of the Issue on Appeal ..........................................................2

Statement of the Case ...............................................................................3

Summary of the Argument.....................................................................16

Argument ...................................................................................................19

    I.    The appeal of the judgment for Martínez's new offense is waived on several grounds and barred by the waiver-of-appeal clause in his 2022 plea agreement ....................................19

    II.    Regarding the revocation of supervised release, the district court did not err, plainly or otherwise, in receiving evidence from the government's firearm expert confirming the uncontested fact in Martínez's presentence report that his firearm was a machinegun.............................................................21

Conclusion.................................................................................................31

# TABLE OF AUTHORITIES

## FEDERAL CASES

Camreta v. Greene, 563 U.S. 692 (2011) .............................................30

Davis v. United States, 140 S. Ct. 1060 (2020) ...................................21

Liteky v. United States, 510 U.S. 540, (1994) .....................................29

McGinley v. Houston, 361 F.3d 1328 (11th Cir. 2004).....................................31

Ohio A. Philip Randolph Inst. v. Larose,
    761 F. App'x 506 (6th Cir. 2019) ......................................................30

United States v. A.R., 81 F.4th 13 (1st Cir. 2023)................................24

United States v. Chen, 998 F.3d 1 (1st Cir. 2021) ..............................24

United States v. Colón-Maldonado, 953 F.3d 1 (1st Cir. 2020).......................23

United States v. Crocco, 15 F.4th 20 (1st Cir. 2021) ..........................20

United States v. De La Cruz, 91 F.4th 550 (1st Cir. 2024) .......................... 23-25

United States v. DiTomasso, 621 F.3d 17 (1st Cir. 2010).................................20

United States v. Maria Rodriguez, 945 F.3d 1 (1st Cir. 2019) ........................28

United States v. McCullock, 991 F.3d 313 (1st Cir. 2021) ............. 20, 23, 25-26

United States v. Orlando-Figueroa, 229 F.3d 33 (1st Cir. 2000).....................29

United States v. Pabon, 819 F.3d 26 (1st Cir. 2016) ................................... 20, 22

United States v. Parrilla-Tirado, 22 F.3d 368 (1st Cir. 1994) ..........................24

United States v. Portell-Márquez, 59 F.4th 533 (1st Cir. 2023) .......................27

United States v. Rodriguez Cortes, 949 F.2d 532 (1st Cir. 1991) ....................27

United States v. Rodriguez-Marrero, 390 F.3d 1 (1st Cir. 2004)............... 26-27

United States v. Ruiz-Huertas, 792 F.3d 223 (1st Cir. 2015).....................21-22

United States v. Teeter, 257 F.3d 14 (1st Cir. 2001) ..........................................19

United States v. Viloria-Sepúlveda, 921 F.3d 5 (1st Cir. 2019) .......................21

United States v. Vélez-Soto, 804 F.3d 75 (1st Cir. 2015)...................................21

United States v. Zannino, 895 F.2d 1 (1st Cir. 1990)........................... 20, 26, 29

## FEDERAL STATUTES

18 U.S.C. § 922(g)(1) ...............................................................4

18 U.S.C. § 922(o) ...................................................................4

18 U.S.C. § 1791 ......................................................................3

18 U.S.C. § 3231 ......................................................................1

18 U.S.C. § 3553(a) ........................................................ 10, 13-14

18 U.S.C. § 3742(a) ..................................................................1

21 U.S.C. § 846 ..................................................................... 3-4

26 U.S.C. § 5845(a) ......................................................... 6, 17, 28

28 U.S.C. § 1291 ......................................................................1

## FEDERAL RULES

Fed. R. App. P. 32(a)(5) ..........................................................33

Fed. R. App. P. 32(a)(6) ..........................................................33

Fed. R. App. P. 32(f) ...............................................................33

## FFEDERAL SENTENCING GUIDELINES

USSG § 2K2.1(a)(3) ............................................................................................. 5-6

USSG § 3E1.1 ......................................................................................................5

The district court had original jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. The district court sentenced defendant-appellant Kalel Jorell Martínez-Bristol and entered its judgment on February 6, 2023. (No. 21-cr-233, DE 77). Martínez filed a timely notice of appeal. (No. 21-cr-233, DE 79). The district court entered its judgment for Martínez's revocation of supervised release on February 9, 2023. (No. 11-cr-241; DE 7098). Martínez filed a timely notice of appeal for his revocation judgment. (No. 11-cr-241, DE 7095).[1]

---

[1] "DE" refers to docket entries before the district court in District of Puerto Rico criminal case Nos. 11-cr-241 and 21-cr-233. "AB" refers to Appellant's Brief. "AA" is the Appellant's Appendix, though with the exception of the emails pertaining to plea negotiations, this brief refers to the docket entries because the appendix contains excerpts of docket entries.

## STATEMENT OF THE ISSUE ON APPEAL

**I. Whether this Court should dismiss the portion of this consolidated appeal pertaining to the judgment for Martínez's new offense where Martínez makes no argument regarding that judgment and where his sentence triggers the waiver-of-appeal provision in his plea agreement.**

**II. Whether the district court plainly erred in hearing the testimony, by way of proffer, from a government firearms witness after having granted a continuance to the defense.**

**Martínez's 2011 Drug Trafficking Offense**

Kalel Martínez-Bristol was part of a large drug trafficking conspiracy that operated in the La Perla Ward of San Juan from 1998 to 2011. (No. 11-cr-241, DE 2340 at 1–2, 12–13). In that conspiracy, Martínez acted as a seller of the drug trafficking organization and "while the conspiracy distributed in excess of 1 kilogram of heroin, five kilograms of cocaine, and one thousand kilograms of marijuana," Martínez "possessed with intent to distribute at least 2 but less than 3.5 kilograms of cocaine" in La Perla. (No. 11-cr-241, DE 2340 at 12).[2] Martínez pleaded guilty to conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846 and received a sentence of 87 months. (No. 11-cr-241, DEs 2340 and 3502). He was released and began his term of supervised release in February 2019. (No 11-cr-241, DE 6758).

---

[2] After his arrest but before his sentencing in the drug case, Martínez was found with a cell phone at the detention facility and charged with possession of contraband in violation of 18 U.S.C. § 1791. (No. 12-cr-729, DE 1). He entered a straight plea of guilty and received a sentence of time served. (No. 12-cr-729, DEs 25, 26).

**Martínez's 2021 Firearms Offense**

In June 2021, while Puerto Rico police officers were conducting several interventions in La Perla, two officers approached a drug point and observed Martínez standing in the vicinity of the drug point with a pistol magazine protruding from his right pant pocket. (No. 21-cr-233, DE 71 at 5). One of the officers asked him if he had a firearms license and after Martínez acknowledged that he did not, he immediately tried to flee. (*Id*.). The officer was able to subdue Martínez and place him under arrest. (*Id*.). The officers discovered a Glock pistol with a visible machinegun conversion device, two pistol magazines (one of which was a high-capacity magazine), 43 rounds of ammunition, and $525 dollars. (No. 21-cr-233, DE 71 at 5–6).

**District Court Proceedings**

A federal grand jury charged Martínez with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and possession of a machinegun in violation of 18 U.S.C. § 922(o). (No. 21-cr-233, DE 1).

In the docket for Martínez's 2011 case, the probation officer submitted a motion notifying violations of supervised release conditions because

Martínez had committed a new offense. (No. 11-cr-241, DE 6758). The motion described Martínez's firearm offense, including what the officers found on his person: "Agent Sanabria-Velez detained him and performed a search in which it was found a black Glock pistol, model 19, with the serial number BFZC517, 9mm caliber, loaded with 18 ammunition and an attachment that, in the opinion of Agent Sanabria, is used so that said gun fires automatically. Mr. Martinez-Bristol also possessed a black magazine with 25 rounds." (No. 11-cr-241, DE 6758 at 2).

Then, for his new offense, Martínez entered into a plea agreement in which he pleaded guilty to count one for felon-in-possession of a firearm and ammunition. (No. 21-cr-233, DE 64). The agreement contained a base offense level of 22 under USSG § 2K2.1(a)(3) and subtracted three levels for acceptance of responsibility under USSG § 3E1.1, yielding a total offense level of 19. (No. 21-cr-233, DE 64 at 3). The parties agreed to recommend a sentence within the applicable range at a total offense level of 19 when combined with the criminal history category determined by the district court. (No. 21-cr-233, DE 64 at 4). The stipulation of facts did not reference

the visible machinegun conversion device attached to Martínez's Glock pistol. (*See, generally*, No. 21-cr-233, DE 64 at 11–12).

Martínez's 2022 plea agreement included a waiver-of-appeal clause that provided:

> Defendant knowingly and voluntarily agrees that, if the sentence imposed by the [district c]ourt is within or below the Guidelines range for the total offense level calculated in this Plea Agreement when combined with Defendant's criminal history category as determined by the [district c]ourt, Defendant waives the right to appeal any aspect of this case's judgment and sentence, including, but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

(No 21-cr-233, DE 64 at 4).

The probation officer submitted its presentence report with the district court. Like the plea agreement, the report's Guidelines calculation included a base offense level of 22, a reduction of three levels for acceptance of responsibility, and a resulting total offense level of 19. (No. 21-cr-233, DE 71 at 7–8). The report explained that it applied the base offense level of 22 under USSG § 2K2.1(a)(3) because Martínez possessed a firearm described in 26 U.S.C. § 5845(a). (No. 21-cr-233, DE 71 at 7). The report determined that Martínez fell within criminal history category IV, so his resulting Guidelines

range was 46 to 57 months. (No. 21-cr-233, DE 71 at 9, 15). Though it recognized the parties had reached an agreement, the presentence report included a disclaimer that it was "not necessarily limited to the facts agreed to by the parties in a plea agreement or stipulation." (No. 21-cr-233, DE 71 at 5 n.1). The presentence report included in the description of the offense conduct that the officers who approached Martínez found him with a Glock pistol that "had a visible machinegun conversion device, commonly known as 'Chip[,'] attached to the rear of the slide." (No. 21-cr-233, DE 71 at 5).

The probation officer filed an addendum to the presentence report informing the district court that neither party had objected to the report. (No. 21-cr-233, DE 75).

At the sentencing hearing for Martínez's new offense, Martínez's counsel began by referencing an issue for his revocation—whether the new offense was a grade A or grade B violation. (No. 21-cr-233, DE 83 at 3–6). His counsel told the court that he believed during the negotiations, the government communicated that the agreement would enable him to argue that his violation was a grade B violation. (*Id*.). The court reminded defense counsel that he was discussing the revocation, rather than the new offense

that the hearing was for, and it asked briefly for the government's input. (No. 21-cr-233, DE 83 at 5–6). The government stated that it had indicated "if [Martínez] were to plead to a G1 [(felon-in-possession)], he could potentially argue for a grade B violation as opposed to a grade A violation." (No. 21-cr-233, DE 83 at 7). But the government had told the defense that it would argue that the new offense was a grade A violation, so the prosecutor recommended proceeding with the sentencing for the new offense and said she had no objection to a continuance in the revocation proceeding. (No. 21-cr-233, DE 83 at 7–8).

Moving to the sentencing for the new offense, Martínez's counsel pointed to the presence of his mother at the hearing and mentioned her numerous medical conditions. Describing that the mother had constantly inquired about her son's case, the defense counsel described saying to his client, "Listen, with such a beautiful mother that you have, why are you insisting on this type of behavior?" (No. 21-cr-233, DE 83 at 10). His counsel suggested that Martínez had made some efforts to educate himself during his previous incarceration, but still had misconduct incidents and that, the

defense argued, suggested that "an extended period of time" would not "have any effect." (No. 21-cr-233, DE 83 at 11).

The district court asked Martínez if the sections in the presentence report describing "the offense, the counts, what happened, [his] personal and family information" were all correct. (*Id.*). Martínez responded that they were. In his allocution, Martínez apologized to his mother and thanked her for her support. (No. 21-cr-233, DE 83 at 12).

The government stated that it stood by the plea agreement and recommended a sentence of 57 months. (No. 21-cr-233, DE 83 at 13–14). In support of its recommendation, the government recounted that the weaponry Martínez possessed included a firearm, two magazines (including one high-capacity magazine) and 43 rounds of ammunition, all of which contributed to the dangerousness of his offense. (No. 21-cr-233, DE 83 at 14–15). The government added that he had committed infractions during his previous incarceration. (*Id.*). And it finally added that, unlike many defendants, he had a supportive family and there were no indications of a troubled upbringing. (No. 21-cr-233, DE 83 at 15).

The district court agreed with the Guidelines calculations in the presentence report, resulting in a Guidelines range of 46 to 57 months. (No. 21-cr-233, DE 83 at 16). It reviewed Martínez's personal history and characteristics through the lens of 18 U.S.C. § 3553(a). (No. 21-cr-233, DE 83 at 16–18). The court also considered the nature and circumstances of Martínez's firearm offense, including that he possessed "one Glock pistol, . . . that had a visible machine[gun] conversion devise, commonly known as a chip, that was attached to the same. . . ." (No. 21-cr-233, DE 83 at 17). The court considered that Martínez was also subject to revocation proceedings. (No. 21-cr-233, DE 83 at 18). It imposed a sentence of 46 months. (*Id.*). The district court then granted Martínez's request for a continuance and reset the revocation hearing for three days later. (No. 21-cr-233, DE 83 at 22). Martínez made no objection.

At the final revocation hearing for the supervised release violation from Martínez's 2011 drug case, the defense counsel indicated that he had an opportunity to speak with his client and was prepared to argue that his new offense was a grade B violation for purposes of revocation. (No. 11-cr-241, DE 7134 at 3). "If we look at the PSR, there's not one single piece of fact

there that we already conceded to the PSR that will put the weapon [] that was possessed within the definition of a machine[gun], so therefore, Judge, respectfully understand that we are under a Grade B violation . . ." (No. 11-cr-241, DE 7134 at 4). The government stated that its position was the violation was a grade A violation based on the description of the offense conduct in the presentence report. (No. 11-cr-241, DE 7134 at 5). After hearing from the probation officer, who added that the motion notifying violations indicated that Martínez possessed a machinegun, the district court determined that it would recall the case later that day because the "hearing [was] being contested." (No. 11-cr-241, DE 7134 at 5–6, 13). "To the extent that you're contesting I'm enabling the Government to present evidence, because both of you right now stand in different sides of the spectrum. You're saying it's B, Government is saying it's A. . . . The Government will get the evidence and the witness that you need." (No. 11-cr-241, DE 7134 at 15).

When the case was recalled, Martínez asked for more time because the government brought "the person that tested the weapon." (No. 11-cr-241, DE 7134 at 16). The court responded that he had been provided notice and

the report by the firearms witness during discovery for the 2021 firearms case, so this was not new evidence for Martínez. (No. 11-cr-241, DE 7134 at 16–17). The government added that the presentence report for the firearms case both included the description of the gun as machinegun and applied a base offense level of 22 because it was a machinegun. (No. 11-cr-241, DE 7134 at 19–20). The court remarked that it could consider "all relevant conduct in the revocation proceedings." (No. 11-cr-241, DE 7134 at 20).

The defense counsel argued that the parties had been "very careful when we were drafting that plea," namely in that he pleaded guilty only to felon-in-possession and the parties removed the plea agreement from the stipulation of facts. (No. 11-cr-241, DE 7134 at 24). There was an extended exchange between the defense counsel and the district court as to whether the district court was limited to the stipulation of facts and counts of conviction in the parties' plea agreement. (No. 11-cr-241, DE 7134 at 24–28). Martínez, through his counsel, argued that there was no evidence in the plea agreement or the presentence report that he had possessed a machinegun. (No. 11-cr-241, DE 7134 at 27).

The district court stated that it would let the government present evidence "to make the record clear," and Martínez asked for more time to prepare. (No. 11-cr-241, DE 7134 at 29). When the defense counsel again referenced plea negotiations and the government commented that it had not agreed to a grade B violation, the defense counsel agreed that "[t]hey never agreed to the [grade B]," "they [said] I could argue for a Grade B violation." (No. 11-cr-241, DE 7134 at 30). The defense confirmed that it knew the government was going to argue for the grade A violation. (*Id.*).

The court rejected the argument that the court was limited to the facts stipulated in the plea agreement. (No. 21-cr-233, DE 83 at 34–35). The court explained that the plea agreement was not binding on the court, the machinegun factored into the Guidelines calculation for the 2021 firearms case, and the relevant conduct in the firearms case included the fact that Martínez's gun was a machinegun, and he had received discovery confirming that it was a machinegun. (No. 11-cr-241, DE 7134 at 36–37).

Then the government gave the proffer of the ATF special agent's review of Martínez's machinegun. (No. 11-cr-241, DE 7134 at 37–38). The government described that the agent determined by visual review of the

firearm and by a "dry test" that the pistol was a machinegun. (*Id.*). The government moved to admit the agent's report and photographs of the pistol, which the court accepted. (No. 11-cr-241, DE 7134 at 38–39). The defense counsel confirmed that he had received those documents in discovery. (No. 11-cr-241, DE 7134 at 39).

The defense counsel declined to cross-examine the witness because he expressed that he was not ready to do so. (No. 11-cr-241, DE 7134 at 39–40). Counsel elaborated further that it did not "matter if [he] agree[d] or not[,]. . .the Court can take consideration of it because [i]n revocation proceeding[s] [it] is allowed to do so." (No. 11-cr-241, DE 7134 at 40).

Emphasizing the need for deterrence, the government requested a statutory maximum sentence in light of Martínez's criminal history and his infraction in prison. (No. 11-cr-241, DE 7134 at 41–43).

The district court determined that Martínez had violated the conditions of his supervised release by committing a new offense, so it revoked his supervised release. (No. 11-cr-241, DE 7134 at 43). The court determined that he committed a grade A violation, so his advisory Guidelines range was 12 to 18 months. (No. 11-cr-241, DE 7134 at 43–44). The

district court considered the seriousness of the violation, his history and characteristics, and all other sentencing objectives, and it imposed a sentence of 15 months. (No. 11-cr-241, DE 7134 at 44). Elaborating, the district court explained: "[Y]ou have to strive harder at your process of rehabilitation, because you keep challenging rules, regulations, and authority while at MDC. But, still, I didn't go along with the request of the Government. You're a young age. As you mentioned, if you want to, you can change. I hope you do. Because no one should be going in and out of jail. . . ." (No. 11-cr-241, DE 7134 at 45). Martínez made no objection.

Martínez appealed both his 2021 firearms offense and the revocation of his supervised release. (No. 21-cr-233, DE 79; No. 11-cr-241, DE 7095). This Court consolidated those two cases. *See* Order, *United States v. Martínez-Bristol*, Nos. 23-1204 & 23-1205 (1st Cir. Aug. 24, 2023).

Martínez brings a consolidated appeal of the judgment and sentence for his new offense and the revocation of his supervised release. Both face a host of preservation issues and should fail in any event.

Though Martínez appealed the revocation and sentence pertaining to his new offense, the 2021 firearms offense, his consolidated brief makes no argument or mention of how the district court erred in that case. The appeal for that case, No. 23-1204, should be dismissed.

Martínez's challenge to his revocation judgment and sentence likewise fails. Though he mentions fleetingly that the district court erred in revoking his supervise release (AB 16), he never explains how and seems to focus his appellate efforts on the procedural reasonableness of his sentence. He provides no reason why this Court should review the district court's decision to revoke his supervised release and, indeed, his own argument about the grade of the new offense necessary accepted the basis for revocation—that he had committed a new offense.

The challenge to his revocation sentence likewise faces several preservation issues. He never objected to the revocation of his supervised

release or to the procedural reasonableness of his revocation sentence. He raises different arguments on appeal than he did before the district court, and he fails to argue how he could prevail under plain error. His challenge to the revocation sentence is waived.

In any event, the district court did not err, under plain error or any other standard, in declining to grant a second continuance. Martínez had asked for another continuance upon learning that the government would present evidence of the agent who examined his firearm. He does not explain the utility of that continuance when the agent merely corroborated what had already been established as a record fact from his firearms case—that his Glock had been modified to fire automatically and was thus a machinegun. That it was a machinegun was evident from the description of the firearm in the presentence report and the Guidelines calculation which included a firearm listed in 26 U.S.C. § 5845(a), and Martínez acknowledged that he received the agent's report indicating it was modified to fire automatically. So there was no error in the district court accepting the agent's testimony and concluding, based on everything before the court, that he committed a grade A violation for possessing a machinegun.

Finally, his contention that the district court showed biased is incorrect. The back and forth between the district court and the defense counsel merely showed the frustration that the defense counsel did not seem to follow what the district court was explaining. But as the Supreme Court has explained, judicial rulings and even harsh displays of frustration, are not indications of bias. Nothing in the district court proceeding showed a need for reassignment. And, having received a low-end sentence and a mid-range sentence, Martínez fails to acknowledge that another member of the district court could view his cases as significantly more aggravating.

This Court should affirm.

**ARGUMENT**

## I.    The appeal of the judgment for Martínez's new offense is waived on several grounds and barred by the waiver-of-appeal clause in his 2022 plea agreement

**Issue**

Martínez appeals his judgment and sentence for his 2021 felon-in-possession case. (*See* No. 21-cr-233, DE 81 (assigning appeal No. 23-1204 to the appeal of that case)). In his consolidated opening brief, Martínez does make any argument regarding his sentence in that case or explain how he is challenging it on appeal.

**Standard of Review and Discussion**

Ordinarily, this Court would analyze a waiver-of-appeal provision under its analysis in set forth in *United States v. Teeter*, 257 F.3d 14 (1st Cir. 2001). Martínez's waiver-of-appeal provision plainly bars his appeal because he received a sentence at the low-end of the range that the waiver contemplates. (*Compare* (No 21-cr-233, DE 64 at 4) *with* (No. 21-cr-233, DE 83 at 18)). But there is no reason to conduct a *Teeter* analysis. Though he appeals the judgment in that case, he raises no claim of error in his consolidated appeal regarding that case. Because any claim was "available to [him] when

19

he filed his opening brief," it "falls within the familiar rule that issues not advanced in an appellant's opening brief are deemed waived." *United States v. DiTomasso*, 621 F.3d 17, 26 n.7 (1st Cir. 2010), *vacated on other grounds*, 565 U.S. 1189 (2012); *see also United States v. Crocco*, 15 F.4th 20, 25 (1st Cir. 2021) ("These arguments, not raised in his opening brief, are waived."). He also made no objection at the sentencing hearing for the new firearms offense, so any challenge to his sentence would be subject to plain error, *United States v. McCullock*, 991 F.3d 313, 318 (1st Cir. 2021), and then waived for failure to address the four prongs of plain error. *United States v. Pabon*, 819 F.3d 26, 33 (1st Cir. 2016).

Martínez offers no reason why this Court should address appeal No. 23-1204 pertaining to the judgment for his new offense. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). Here, the opening brief does not even mention a possible argument regarding the felon-in-possession judgment or sentence. This Court should dismiss the appeal of the judgment for the firearms offense.

**II.  Regarding the revocation of supervised release, the district court did not err, plainly or otherwise, in receiving evidence from the government's firearm expert confirming the uncontested fact in Martínez's presentence report that his firearm was a machinegun**

<u>Issue</u>

Martínez claims that the district court erred in revoking his supervised release because the grade determination was the product of receiving testimony of a witness for whom the defense did not have sufficient time to prepare a strategy. (AB 16). He argues that the district court violated his due process and limited confrontation rights and therefore imposed a procedurally unreasonable sentence by not providing sufficient time to prepare a limited cross-examination. (AB 16–20).

<u>Standard of Review</u>

This Court reviews preserved sentencing challenges for abuse of discretion. *United States v. Viloria-Sepúlveda*, 921 F.3d 5, 8 (1st Cir. 2019). Within that framework, this Court reviews "a district court's factual findings for clear error, and its interpretation and application of the Guidelines de novo." *United States v. Vélez-Soto*, 804 F.3d 75, 77 (1st Cir. 2015). This Court reviews unpreserved challenges for plain error. *Davis v. United States*, 140 S. Ct. 1060, 1061–62 (2020). Plain error is a "daunting standard." *United States*

*v. Ruiz-Huertas*, 792 F.3d 223, 226 (1st Cir. 2015). To prevail, a defendant must show: (1) an error occurred; (2) it was clear or obvious; (3) it affected his substantial rights; and (4) it seriously impaired the fairness, integrity, or public reputation of judicial proceedings. *Id.* A defendant waives an argument subject to plain error review by failing to address the four prongs of plain error. *United States v. Pabon*, 819 F.3d 26, 33 (1st Cir. 2016).

## Discussion

Martínez cannot show that the district court erred, plainly or otherwise, in revoking his supervised release or sentencing him to the within-Guidelines sentence of 15 months. Martínez faces multiple levels of waiver. But even if he could overcome waiver, there was no reversible error in the revocation. The district court provided Martínez the opportunity to cross-examine the witness and he chose not to, and the witness's proffered testimony was duplicative of his report and the unobjected-to facts from Martínez's firearms prosecution. All supported the conclusion that he possessed a machinegun.

There was no objection to the revocation of Martínez supervised release during the guilt phase of the proceeding, nor was there any objection

to the lower court's chosen sentence. *United States v. Colón-Maldonado*, 953 F.3d 1, 8 (1st Cir. 2020) (explaining that revocation hearings have two phases, "'the guilt or violation-determination phase' and 'the sentencing phase.'"). But on appeal, Martínez appears to challenge both. (AB 16 (alleging the court "erred in revoking his supervised release"); *id.* (claiming a "procedurally unreasonable revocation sentence")). These claims would be subject to plain error review, *McCullock*, 991 F.3d at 318, but he waived them by failing to brief the four prongs of plain error. *United States v. De La Cruz*, 91 F.4th 550, 551, n.1 (1st Cir. 2024).

Still, Martínez faces a more preservation issues. His primary claim on appeal seems to be the consideration of the firearm examiner's testimony, without more time to prepare. But not only did he not challenge testimony being presented through proffer, he specifically told the district court that it was permitted to consider that evidence because the governing rules were more flexible in revocation proceedings. (No. 11-cr-241, DE 7134 at 40) (defense counsel stating that it did not "matter if [he] agree[d] [(to the proffered testimony)] or not[,]. . .the Court can take consideration of it because [i]n revocation proceeding[s] [it] is allowed to do so"). Because

Martínez is now arguing that the district court erred by doing something he told the court it was "allowed to do," his argument is waived. *United States v. A.R.*, 81 F.4th 13, 25 (1st Cir. 2023) (finding a position was waived because the juvenile defendant could not "claim that the district court erred in doing what he affirmatively agreed to"); *United States v. Parrilla-Tirado*, 22 F.3d 368, 373 (1st Cir. 1994) ("It is the policy of the law to hold litigants to their assurances."). Martínez was provided the opportunity to cross-examine the firearm examiner, but he chose not to do so. (No. 11-cr-241, DE 7134 at 39 ("[District Court]: So the proffer is on record. Do you want to cross-examine the Government's agent?" / "[Defense Counsel]: Your Honor, I have to - - I cannot - - "). He declined to cross-examine the agent and never mentioned the limited confrontation right under Rule 32.1 that he now claims is at issue on appeal, so his arguments are waived. *United States v. Chen*, 998 F.3d 1, 9 (1st Cir. 2021); *De La Cruz*, 91 F.4th at 551, n.1.

Martínez also brings a new argument that was available to him in the district court but different than the challenge he raised. Before the district court, he argued that there was nothing in the record from his firearms case indicating that his firearm was a machinegun. (No. 11-cr-241, DE 7134 at 4).

Now, on appeal, he adds to that argument by contending that there was nothing in the firearms case record showing that *he knew* it was an automatic firearm. (AB 19). Because his argument that the knowledge was not established is new on appeal it is subject to plain error and waived for failure to brief plain error. *McCullock*, 991 F.3d at 318; *De La Cruz*, 91 F.4th at 551, n.1. In any event, as discussed in this brief below, there was evidence from which the district court could infer his knowledge because the machinegun conversion device was described as a "visible" addition to the exterior of his Glock pistol. (No. 21-cr-233, DE 71 at 5).

Finally, Martínez waives his argument regarding the guilt or violation-finding phase of the revocation hearing by failing to distinguish between the two phases of the hearing and by accepting that he committed another offense below. The debate at the hearing about whether his offense was a grade B or grade A violation was relevant to the Guidelines calculation; regardless, there was no debate that he had committed another offense that warranted the revocation of his supervised release. (No. 11-cr-241, DE 7134 at 4–5, 28). Because Martínez fails to explain why this Court should review

the decision to revoke his supervised release, this Court should deem it waived. *Zannino*, 895 F.2d at 17.

If Martínez can overcome all of those waiver issues, his claim still fails on the merits, under any standard. The district court did not err by declining to grant another continuance for him to prepare to cross-examine the firearms examiner, and he offers no authority (certainly not "binding authority," *McCullock*, 991 F.3d at 322) suggesting otherwise. The parties appeared before the court three days earlier for the sentencing in Martínez's firearms case and there, Martínez informed the court that the parties disagreed as to the grade of the violation. So, he was given three days, from a Monday to Thursday, to prepare to argue why the violation was a grade B violation. (No. 21-cr-233, DE 83 at 22). Martínez knew that the dispute over the grade would entail discussion of the record evidence in the firearms case, and he argued that the evidence in that case did not show that he possessed a machinegun. (No. 11-cr-241, DE 7134 at 4). The district court did not abuse its discretion in declining to grant another continuance when the court merely rejected Martínez's argument on the record evidence on which he relied (albeit, trying to limit the scope of that evidence). *See United States v.*

*Rodriguez-Marrero*, 390 F.3d 1, 21–22 (1st Cir. 2004) (quoting *United States v. Rodriguez Cortes*, 949 F.2d 532, 545 (1st Cir. 1991)) (explaining that this Court affords "'broad discretion' to a trial court to decide a continuance motion and will only find abuse of that discretion with a showing that the court exhibited an 'unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay'").

Further, Martínez fails on appeal to address the district court's explanation that the firearm examiner's proffered testimony merely corroborated what the other evidence already established—that his firearm was a machinegun. *United States v. Portell-Márquez*, 59 F.4th 533, 539 (1st Cir. 2023) (any consideration of "Spanish-language information was merely cumulative of the information to which Portell admitted" and would therefore be harmless). Martínez never objected to the presentence report in the firearms case, so it was an established record fact that he possessed a Glock pistol with a "visible machinegun conversion device, commonly known as 'Chip [,'] attached to the rear of the slide." (No. 21-cr-233, DE 71 at 5; *see also id.* at 9 (describing, in reference to probation officer's motion, the Glock as being "modified to fire automatically), and No. 11-cr-241, DE 6758

at 2 (describing firearm as having "an attachment that, in the opinion of Agent Sanabria, is used so that said gun fires automatically").[3] As the district court explained, the fact that his pistol was a machinegun was established by the description in the presentence report, the Guidelines calculation in that report, and the examiner's report that the government introduced into evidence. (*See* No. 11-cr-241, DE 7099 (government's exhibits)).[4] The proffered testimony of the examiner was merely cumulative of what had

---

[3] Given the visibility of the conversion device, had Martínez argued knowledge below, the government would have argued that it was a reasonable inference that an armed individual at a drug point knew what the visible chip on his pistol did. *United States v. Maria Rodriguez*, 945 F.3d 1, 3 (1st Cir. 2019) ("A sentencing judge may draw reasonable inferences from information contained in the sentencing record.") (internal quotation omitted).

[4] To the extent that Martínez appears to argue that his acceptance of the Guidelines calculation in the 2021 firearms case meant that he accepted a firearm in 26 U.S.C. § 5845(a), but not necessarily a machinegun (AB 18), his argument fails for a few reasons. One, as detailed above, that was merely one basis in which his other case established his gun was a machinegun. Second, he does not explain what other firearm in § 5845 could be given that his weapon was unquestionably a type of pistol. Martínez cannot show that his pistol fit the definition of another § 5845(a) weapon. That is particularly true when the unobjected-to presentence report made clear it was a pistol with a visible "chip." (No. 21-cr-233, DE 71 at 5). And finally, even if his 2021 firearms case did not entirely establish his possession of a modified Glock, the exhibits that the government introduced at his revocation hearing removed any doubt. (*See* No. 11-cr-241, DE 7099).

already been established, so the utility of a continuance would be minimal. *United States v. Orlando-Figueroa*, 229 F.3d 33, 40 (1st Cir. 2000) (among the factors this Court considers are "the defendant's diligence, the inconvenience to the court and other parties, the likely utility of a continuance, and any unfair prejudice caused by the denial"). While he suggests that he needed time to confer with his client (AB 16), he does not explain why—having already received a three-day continuance to prepare— he could not do so in the additional hour provided or what purpose speaking with his client more would serve. *Zannino*, 895 F.2d at 17. That Martínez's gun was a machinegun was already clear from his new case, and his attempts to limit the district court to the stipulation of facts in his plea agreement is unsupported by authority.

Finally, Martínez asks this Court to remand to a new judge because he says the district court below evinced bias. But there is no support for that allegation. If anything, the district court demonstrated frustration that Martínez was not following the reason for rejecting his argument. *Liteky v. United States*, 510 U.S. 540, 555–56, (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality. . . . Not establishing bias

or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary effort at courtroom administration—remain immune."). Martínez cannot show bias merely by pointing to the judge rejecting his argument or expressing frustration.

But what he also fails to address is the potential that he could be in a much worse position before another judge if he successfully challenged one of his sentences. *Ohio A. Philip Randolph Inst. v. Larose*, 761 F. App'x 506, 513 n.4 (6th Cir. 2019) ("[T]ypically district court judges are not bound by previous decisions of other judges within the same district."). And though this brief argues that he should not succeed as to either the firearms case or the revocation case, if he were to succeed on one or both, there is nothing preventing another judge from concluding that his offenses and personal history and characteristics warrant a stiffer sentence. *Id.*[5] He received a low-

---

[5] *See also See Camreta v. Greene*, 563 U.S. 692, 730, n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a

end Guidelines sentence for one and a mid-range Guidelines sentence for the other. He had participated in the drug conspiracy of an organization in La Perla and upon release, he was found with a machinegun at a drug point in La Perla. A new judge could reasonably determine that his case warrants a longer sentence. The government, after all, had asked the district court to impose a statutory maximum revocation sentence. (No. 11-cr-241, DE 7134 at 41, 43).

His challenges to the revocation and revocation sentence are waived in multiple ways and they are unavailing even if he overcame waiver. This Court should affirm his mid-range sentence of 15 months.

## CONCLUSION

The district court did not err, plainly or otherwise, in sentencing Martínez to the low end of his Guidelines for his new firearms case. Nor does Martínez's brief argue that it did, despite appealing that sentence and judgment. Though he briefly says that the court erred in revoking his

_____

different case.") (internal quotation omitted); *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("The general rule is that a district judge's decision neither binds another district judge nor binds him, although a judge ought to give great weight to his own prior decisions.").

supervised release, he never explains how. Martínez himself was arguing that there was a violation of his conditions for committing a new offense, he just disagreed with what grade the violation was. And finally, any procedural attack on his revocation sentence is waived for a host of reasons and should fail anyway. The district court did not err in declining to grant another continuance when the contested determination that Martínez possessed a machinegun had already been established from the presentence report in the firearms case. This Court should affirm.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this Monday, March 18, 2024.

W. Stephen Muldrow
United States Attorney

Mariana E. Bauzá-Almonte
Assistant United States Attorney
Chief, Appellate Division

/s/ Gregory B. Conner
Assistant United States Attorney
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Avenue
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax (787) 771-4050

# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

Certificate of Compliance with Rule 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type-Style Requirements

1. This brief complies with the type-volume limitation in Fed. R. AA P.
   32(a)(7)(B) because:

   ☑ the brief contains <u>6,277</u> words, excluding the parts of the brief
   exempted under Fed. R. App. P. 32(f), *or*

   ☐ the brief uses a monospaced typeface and contains _____
   lines of text, excluding the parts of the brief exempted under Fed.
   R. App. P. 32(f).

2. This brief complies with the typeface requirements in Fed. R. App. P.
   32(a)(5) and the type-style requirements in Fed. R. App. P. 32(a)(6)
   because:

   ☑ the brief has been prepared in a proportionally spaced typeface and,
   except for emphases, in a plain, roman style using <u>Book Antiqua</u> in
   <u>14 point</u>, *or*

   ☐ the brief has been prepared in a monospaced typeface using
   _____ with _____.

Dated: March 18, 2024                /s/ Gregory B. Conner
                                     Assistant United States Attorney

Certificate of Service

**I HEREBY CERTIFY** that on March 18, 2024, I filed the above brief

with the Clerk of Court using the Court's electronic-filing system, which sent

a notification of the filing to the appellant through his attorney of record, a

registered user of the system.

/s/ Gregory B. Conner
Assistant United States Attorney